UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
DOCKET NO. 1:14-cv-00289-MOC-DLH

| | |
|---|---|
| WAN HANG GLORIA CHAN and ROBERT S. ROLAND, | ) ) ) |
| Plaintiffs, | ) ) |
| Vs. | ) ) ORDER |
| UNITED STATES CITIZENSHIP AND IMMIGRATION SERVICES, et al. | ) ) ) ) |
| Defendants. | ) |

**THIS MATTER** is before the court on the parties' cross motions for summary judgment (##18, 19). The court heard oral arguments on the motions on September 9, 2015. Having considered the motions and reviewed the pleadings, the court enters the following Order.

I.  **Factual Background**

The material facts in this case are not in dispute. Plaintiff Robert S. Roland is a United States citizen residing in Hendersonville, North Carolina. His wife, Plaintiff Wan Hang Gloria Chan, is a native of China and a citizen of the United Kingdom residing in Hendersonville, North Carolina. See (#19-2; 19-3). On July 25, 1983, Roland was charged in Dade County, Florida with one count of lewd and lascivious behavior, two counts of lewd and lascivious assault, and one count of indecent exposure. See Administrative Record ("AR") 753. Roland pleaded no contest to indecent exposure, adjudication of guilt on that charge was withheld, and the court sentenced Roland to one year of probation after the remaining charges were dismissed. Id. On May 29, 1994, Roland was again charged in Dade County with two counts of lewd and lascivious assault

on a child under 16 years of age. AR 754. On December 6, 1995, Roland pleaded guilty to the two counts as charged and was sentenced to five years of probation. Id.

On March 20, 2009, Roland and Chan were married in Palm Beach County, Florida. AR 858. On January 11, 2011, Roland filed the I-130 petition ("Form I-130"), which is the first step in obtaining lawful permanent resident status for an alien relative, that is the subject of the instant litigation.[1] AR 703, 917. Along with that I-130 petition, Roland submitted evidence of his criminal record, including the offenses from 1983 and 1994, records showing he completed court-ordered sex-offender treatment, a letter from the individual who treated him, an affidavit from Chan, two affidavits from women he had previously been in relationships with, five affidavits from friends, and evidence that Chan completed police force inspector training in Hong Kong and worked as Chief Inspector of Police Road Safety in Hong Kong from 1992 to 1996. AR 815. Concurrently, Chan filed an Application to Register Permanent Residence or Adjust Status ("Form I-485"). AR 856.

On September 14, 2011, United States Citizenship and Immigration Services ("USCIS") issued Roland a Request for Evidence and Notice of Intent to Deny ("RFE/NOID") the I-130

---

1 The I-130 form is part of the application process to obtain permanent resident status for an alien. As summarized by the Court of Appeals for the First Circuit:

> The INA allows certain relatives of United States citizens to obtain lawful permanent resident ("LPR") status based on a family relationship. See 8 U.S.C. § 1151(a)(1). A United States citizen may petition for an alien spouse or any other "immediate relative" as defined by the statute. This two-step process requires the citizen spouse to first file an I–130 petition with the USCIS on behalf of his alien relative. 8 U.S.C. § 1154(a)(1)(A)(i); 8 C.F.R. §§ 204.1(a)(1), 204.2(a). If the I–130 petition is approved, the alien relative is classified within a specific immigrant visa class. The alien relative, if in the United States, may then seek adjustment of status to that of a LPR by filing an I–485 application. See 8 U.S.C. § 1255 (relating to adjustment of status); 8 C.F.R. § 245.1(a). The I–130 petition requesting the "immediate relative" status of an alien spouse may be filed together with the I–485 application for adjustment of status because approval of the I–130 petition would make a visa immediately available to the alien spouse upon filing the I–485 application. See 8 C.F.R. § 245.1(f).

Neang Chea Taing v. Napolitano, 567 F.3d 19, 21 (1st Cir. 2009).

Form. AR 712-15; 838; (#19-7). The RFE/NOID concluded that Roland had been convicted of what appeared to be an offense that would render him ineligible to act as a petitioner for the I-130 petition and requested additional evidence to establish that he was not precluded from filing the visa petition. Id. Specifically, the RFE/NOID indicated that Roland's prior convictions appeared to be specified offenses under the Adam Walsh Act ("AWA") and that the evidence submitted failed to show that Roland posed no risk to the safety or well-being of Chan. (#19-7).

On December 14, 2011, USCIS received Roland's response, which included additional criminal records related to his convictions, additional records of his mental health treatment, copies of newspaper articles, and various photographs of Chan. AR 838; (#19-8). On June 27, 2013, Roland and Chan appeared for an interview in connection with the I-130 petition and I-485 application. AR 785. On January 13, 2014, USCIS denied the I-130 petition on the basis that Roland had been convicted of a specified offense against a minor as defined in the AWA and failed to prove beyond any reasonable doubt that he posed no risk to the safety and well-being of Chan, the beneficiary of the petition. See Notice of Denial (#19-8); AR 703. On May 15, 2014, USCIS denied Chan's I-485 application on the basis that there was no approved visa petition. See USCIS Decision (#19-10); AR 703.

On November 3, 2014, Plaintiffs filed the instant action, seeking review under the Administrative Procedure Act ("APA") and declaratory relief under the Declaratory Judgment Act. By the complaint, Plaintiffs assert that the Defendants' denial of the I-130 Petition is erroneous as a matter of law, arbitrary and capricious, and constitutes and abuse of discretion through its heightened burden of proof and retroactive application. Plaintiffs also argue that Defendants' denial of the I-130 Petition is unconstitutional in that it violates due process and

Plaintiff Roland's right to marry and pursue happiness. Finally, Plaintiffs argue that Defendants' denial of the I-485 Application is arbitrary and capricious under the APA. In term of relief requested, Plaintiffs seek declaratory judgments stating that: 1) Defendants' decision denying the I-130 Petition was arbitrary and capricious in violation of the APA; 2) Defendants' interpretation of the Immigration and Nationality Act, as amended by the Adam Walsh Act, infringes on Plaintiffs' fundamental right to marry and their due process rights; 3) Plaintiff Chan is entitled to adjustment of status to that of a lawful permanent resident; and 4) Defendants' decision denying Plaintiff Chan's I-485 Application is unlawful under the APA.

## II. Standard of Review

Summary judgment is rendered when there is no genuine issue of material fact which requires a trial and a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Generally, summary judgment is appropriate "when a party who will bear the burden at trial fails to make a showing sufficient to establish an essential element of the case." Laughlin v. Metro. Washington Airports Auth., 149 F.3d 253, 258 (4th Cir. 1998). While there may be disputes over facts in the course of proceedings, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986) (internal citations omitted).

Where a court reviews the decision of an administrative agency, "a motion for summary judgment 'stands in a somewhat unusual light, in that the administrative record provides the complete factual predicate for the court's review.'" Piedmont Envtl. Council v. U.S. Dep't of Transp., 159 F. Supp. 2d 260, 268 (W.D. Va. 2001) aff'd in part, remanded in part, 58 F. App'x

20 (4th Cir. 2003) (quoting Krichbaum v. Kelley, 844 F.Supp. 1107, 1110 (W.D.Va.1994), aff'd, 61 F.3d 900 (4th Cir. 1995) (unpublished)). Here, to the extent that Plaintiffs assert challenges to a final agency action pursuant to the APA, "it is the role of the agency to resolve factual issues to arrive at a decision that is supported by the administrative record, whereas 'the function of the district court is to determine whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did.'" Sierra Club v. Mainella, 459 F. Supp. 2d 76, 90 (D.D.C. 2006) (citing Occidental Eng'g Co. v. INS, 753 F.2d 766, 769–70 (9th Cir.1985); Northwest Motorcycle Ass'n v. United States Dep't of Agriculture, 18 F.3d 1468, 1472 (9th Cir. 1994)). "Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and otherwise consistent with the APA standard of review." Id. (citations omitted).

### III.    Statutory Framework

The Immigration and Nationality Act ("INA") provides the right for a citizen to file a visa petition for his or her spouse. INA § 204(a)(1)(A)(i), 8 U.S.C. § 1154(a)(1)(A)(i). However, in 2006, Congress passed the Adam Walsh Child Protection and Safety Act of 2006 ("AWA"), Pub.L. No. 109–248, 120 Stat. 587 (2006), which amended the INA to bar citizens convicted of a "specified offense against a minor" from filing any family-based visa petition unless the citizen can prove to the satisfaction of the Secretary of the Department of Homeland Security ("DHS") that they pose no risk to the intended alien beneficiary. See 8 U.S.C. §§ 1154(a)(1)(A)(i), 1154(a)(1)(A) (viii) (I). A "specified offense against a minor," as defined in the AWA, includes all offenses by child predators, 42 U.S.C. § 16911, including, inter alia, "(C) Solicitation to engage in sexual conduct.... (H) Criminal sexual conduct involving a minor, or the use of the

Internet to facilitate or attempt such conduct…[and] (I) Any conduct that by its nature is a sex offense against a minor." See 42 U.S.C. § 16911(7). Thus, where a person such as Plaintiff Roland has been convicted of an offense against a minor, he may not petition on behalf of a beneficiary unless "the Secretary…in the [DHS] Secretary's sole and unreviewable discretion, determines that the citizen poses no risk to the alien with respect to whom a petition…is filed." 8 U.S.C. § 1154(1)(A) (viii) (I) (emphasis added). Review of an I–130 Petition under the AWA therefore involves two determinations: 1) whether the petitioner has been convicted of a qualifying crime and, 2) whether the petitioner has proven that he poses no risk to the alien beneficiary.

In enacting the AWA, Congress was silent regarding the standard of proof that a petitioner faces in proving that he or she poses no risk to the beneficiary. However, USCIS has posited via guidance memoranda that a petitioner must provide evidence that establishes "beyond a reasonable doubt" that he or she poses no such risk. See *"Guidance for Adjudication of Family-Based Petitions and I-129F Petition for Alien Fiance(e) under the Adam Walsh Child Protection and Safety Act of 2006,"* Michael Aytes, Assoc. Dir. Domestic Operations, USCIS (HQDOMO 70/1-P) (February 8, 2007) (#19-9); "Transmittal of SOP for Adjudication of Family-Based Petitions under the Adam Walsh Child Protection and Safety Act of 2006," Donald Neufeld, Acting Assoc. Dir., USCIS (HQ 70/1-P) (September 24, 2008). USCIS applied this standard in reviewing Plaintiff Roland's application materials in determining whether he posed "no risk" to his wife, and placed the burden on him to overcome the presumption that he did pose a risk. See Notice of Denial (#19-8 at p. 8).

## IV. Law and Analysis

### A. Subject Matter Jurisdiction

As a threshold matter, the court must determine whether it has subject matter jurisdiction to adjudicate Plaintiffs' claims. See Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). The court notes that district courts across the country addressing the precise jurisdictional question presented here have come to different conclusions on the matter. See, e.g. Bittinger v. Johnson, No. 1:14–CV–1560, 2015 WL 3842649, at *3–4 (M.D.Pa. June 22, 2015); Gebhardt v. Johnson, No. 14–0227–VAP, ECF No. 20 at 13–14 (C.D.Cal. May 11, 2015); Bremer v. Johnson, No. 13–1226–CV–W–ODS, 2014 WL 7238064, at *3–4 (W.D.Mo. Dec.17, 2014)[2]; Beeman v. Napolitano, No. CIV. 10–803–JO, 2011 WL 1897931, at *3–4 (D.Or. May 17, 2011) (all finding that that the district court lacked subject matter jurisdiction to consider constitutional challenges or questions of law related to USCIS's discretionary no-risk determination.). However, at least two other district courts have reached contrary conclusions on the jurisdictional issue. See Bakran v. Johnson, No. 15127–JP, 2015 WL 3631746, at *4 (E.D.Pa. June 11, 2015) ("the designation of the no-risk determination to the Secretary's 'sole and unreviewable discretion' does not preclude courts from evaluating constitutional and procedural challenges."); Burbank v. Johnson, No. 2:14-CV-292-RMP, 2015 WL 4591643, at *3 (E.D. Wash. July 29, 2015)[3]. None of the Circuit Courts of Appeal have rendered a decision on the precise question before the court. As explained herein,

---

[2] The Bremer district court decision is currently on appeal in the United States Court of Appeals for the Eighth Circuit. See Bremer v. Johnson, No. 15–1163 (8th Cir. filed Jan 13, 2015).

[3] While the district court in Burbank found that it had jurisdiction to adjudicate Plaintiff's claims, it found for the government on the substance of Plaintiff's motions. Plaintiff has appealed the district court decision to the United States Court of Appeals for the Ninth Circuit. See Malcolm Burbank v. Jeh Johnson, et al., Ct. App. No. 15-35760 (9th Cir. filed September 29, 2015).

the court finds that the law of this circuit indicates that this court lacks subject matter jurisdiction in this case.

Plaintiffs here brings their claim pursuant to the APA, which enables a reviewing court to "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law[.]" 5 U.S.C. § 706(2)(A). The APA further provides that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." Id. § 704.[4] However, "the APA 'is not a jurisdiction-conferring statute,'" Lee v. U.S. Citizenship & Immigration Servs., 592 F.3d 612, 619 (4th Cir. 2010) (quoting Trudeau v. FTC, 456 F.3d 178, 183 (D.C. Cir. 2006)), and does not confer subject matter jurisdiction to courts where "statutes preclude judicial review" or "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(1-2). "Rather, the jurisdictional source for an action under the APA is the federal question statute, which grants the district court original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States, see 28 U.S.C. § 1331, and thereby confer[s] jurisdiction on federal courts to review agency action." Id. (internal citations and quotations omitted).

The federal question statute at issue here—the INA—contains a jurisdiction-stripping provision, which provides, in relevant part:

(B) Denials of Discretionary Relief

Notwithstanding any other provision of law (statutory or nonstatutory)… and except as provided in subparagraph (D), regardless of whether the judgment,

---

4 "Agency action" is defined as "the whole or part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act[.]" 5 U.S.C. § 551(13).

decision, or action is made in removal proceedings, no court shall have jurisdiction to review—

(i) any judgment regarding the granting of relief under section 1182(h), 1182(i), 1229b, 1229c, or 1255 of this title, or

(ii) any ... decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter <u>to be in the discretion</u> of the Attorney General or the Secretary of Homeland Security.

…

(D) Judicial review of certain legal claims

Nothing in Subparagraph (B)…or in any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals…

8 U.S.C. § 1252(a)(2)(B)-(D)(emphasis added).[5]

Here, as noted above, USCIS' determination of whether a petitioner poses "no risk" to the beneficiary is in the Secretary's "sole and unreviewable discretion," 8 U.S.C. § 1154(a)(1)(A)(viii), and thus is clearly a "discretionary decision" within the meaning of 8 U.S.C. § 1252(a)(2)(B)(ii). Defendants thus argue that this court's jurisdiction is squarely foreclosed by statute because Plaintiff seeks review of a discretionary determination. Plaintiffs argue that jurisdiction is appropriate in this court because they present questions of law and constitutionality, not a review of the discretionary determination itself. Plaintiffs contend that they seek review of Defendants' threshold legal interpretations and conclusions made prior to

---

5 As noted by the Eleventh Circuit,

> The language "regardless of whether the judgment, decision, or action is made in removal proceedings" was added with the passage of the REAL ID Act of 2005, Pub.L. No. 109–13, 119 Stat. 302, presumably to resolve a disagreement between some of our sister circuits and district courts as to whether § 1252(a)(2)(B) applied outside the context of removal proceedings, given that the majority of the provisions within § 1252 seemingly concern removal orders.

<u>Mejia Rodriguez v. U.S. Dep't of Homeland Sec.</u>, 562 F.3d 1137, 1142, n. 13 (11th Cir. 2009) (citation omitted).

issuing the discretionary decision, and that these initial eligibility interpretations and conclusions present legal questions that do not implicate agency discretion.

The court notes that the Fourth Circuit has previously rejected claims that attempt to characterize legal challenges to a discretionary decision as challenges to agency authority and constitutionality where the relief sought is clearly an attempt to bypass the reviewability exception in the APA (5 U.S.C. §701(a)). For example, in Angelex Ltd. v. United States, 723 F.3d 500 (4th Cir. 2013), the Fourth Circuit stated:

> We are cognizant of this court's declaration,
>
>> [E]ven where action is committed to absolute agency discretion by law, courts have assumed the power to review allegations that an agency exceeded its legal authority, acted unconstitutionally, or failed to follow its own regulations, but they may not review agency action where the challenge is only to the decision itself.

Id. at 508 (citing Electricities of N. Carolina, Inc. v. Se. Power Admin., 774 F.2d 1262, 1267 (4th Cir. 1985)). In examining the APA claim in Angelex, however, the Circuit "disagree[d] with Appellees' characterization of the Petition as an attack on the statutory authority or constitutionality of the [agency's] actions. First, Appellees cannot with a straight face argue that the [agency] has acted outside the bounds of § 1908(e) [the federal statute granting the agency wide discretion]. Indeed, those bounds are quite limitless…Likewise, [Appellee's] attempt at turning this matter into a constitutional challenge does not make the matter reviewable and thus, vest the district court with jurisdiction." Id. See also Lee v. U.S. Citizenship & Immigration Servs., 592 F.3d 612, 620 (4th Cir. 2010), discussed infra. The court is thus mindful that it should carefully screen for any improper attempt by Plaintiffs to characterize review of a

discretionary decision as a challenge to allegedly unlawful agency action in order to obtain subject matter jurisdiction.

In considering whether subject matter jurisdiction exists in this case, the court has closely read the Fourth Circuit's decision in Lee v. U.S. Citizenship & Immigration Servs., 592 F.3d 612 (4th Cir. 2010), which, though presenting slightly different facts than this case, is relatively analogous and contains relevant reasoning.[6] In Lee, an alien plaintiff sought review of a USCIS decision concluding that he did not qualify as a grandfathered alien under agency regulations, relevant to his application to adjust his status pursuant to 8 U.S.C. § 1225 become a permanent resident. Id. at 613.[7] Having not been placed in removal proceedings, the plaintiff filed an APA challenge, arguing that the promulgation of the relevant regulation was an ultra vires exercise of USCIS authority because it improperly narrowed the scope of the statute. Id. at 618. The district court granted the government's motion to dismiss, finding that it lacked jurisdiction and that the plaintiff must exhaust his administrative procedural remedies by proceeding from USCIS to the BIA to the court of appeals. Id. The Court of Appeals affirmed, noting, inter alia, that in enacting 8 U.S.C. § 1252(a)(2)(B), "Congress expressly included decisions to deny relief under § 1255 within this jurisdiction-limiting provision; therefore, the denial of an application for adjustment of status under § 1255(i) is not amenable to judicial review." Id. at 619. The Fourth Circuit also found that though Plaintiff claimed to bring questions of law before the court, he was really

---

6 Neither party referenced the Lee case in its briefing, but the court, after conducting independent research, alerted the parties to the case at the hearing and allowed the parties the opportunity to address it in argument.
7 A significant distinguishing fact between Lee and the case presented here is that the discretionary agency decision in Lee (pursuant to 8 U.S.C. §1255) is specifically precluded by name in the INA under 8 U.S.C. § 1252(a)(2)(B)(i), whereas the agency decision at issue here—the USCIS' determination of whether a petitioner poses "no risk" to the beneficiary under 8 U.S.C. § 1154(a)(1)(A)(viii)—falls within the "catch-call" provision of 8 U.S.C. § 1252(a)(2)(B)(ii).

seeking review of the agency's discretionary determination. See id. at 620 ("Although Lee's claim in his amended complaint is carefully worded to avoid expressly challenging the denial of his application for adjustment of status, that is clearly what Lee seeks to do."). The Circuit found that even though Lee, like the Plaintiffs in this case, sought review of agency action under the APA, he could not seek review of such discretionary decision in district court under §1252(a)(2)(B)(i).

The court also finds instructive the recent unpublished decision from the Fourth Circuit Calle v. Holder, 599 F. App'x 72, 73 (4th Cir. 2015), wherein the Circuit found that it was without jurisdiction to review the petitioner's challenge the Department of Homeland Security's discretionary decision under 8 U.S.C. § 1186a(c)(4), which allows the agency to waive certain requirements relevant to lawful permanent resident status for an alien married to United States citizens. The Circuit noted:

> Under 8 U.S.C. § 1252(a)(2)(B)(ii) (2012), we lack jurisdiction to review "any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security." Id. Judicial review is limited to constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(D).… But because Calle is challenging findings that are committed to the sole discretion of the Secretary [under 8 U.S.C. § 1186a(c)(4)] and he does not raise a constitutional claim or a question of law, we are without jurisdiction.

Calle v. Holder, 599 F. App'x 72, 73 (4th Cir. 2015) (unpublished).

The court finds that in light of the express jurisdiction-stripping language of 8 U.S.C. § 1252(a)(2)(B)(ii) and the Fourth Circuit cases interpreting it, this court is without jurisdiction to review USCIS's discretionary decision as to whether Plaintiff Roland showed that he posed no risk to Plaintiff Chan.

The court has also considered whether jurisdiction in this court would be appropriate under 8 U.S.C.A. § 1252(a)(2)(D), which, as noted above, provides that "[n]othing in subparagraph (B) or (C), or any other provision of this chapter (other than this section) which limits or eliminates judicial review, shall be construed as precluding review of constitutional claims or questions of law raised upon a petition for review filed with an appropriate court of appeals in accordance with this section." Id. The Fourth Circuit has noted that "[f]ollowing the enactment of the REAL ID Act…direct judicial review is available [under § 1252(a)(2)(D)] for constitutional questions or questions of law arising from the agency's decision to deny discretionary relief." Jean v. Gonzales, 435 F.3d 475, 480 (4th Cir. 2006). See also Saintha v. Mukasey, 516 F.3d 243, 248 (4th Cir. 2008); Sukwanputra v. Gonzales, 434 F.3d 627, 634 (3d Cir. 2006) ("By virtue of § 1252(a)(2)(D), constitutional claims or questions of law raised in a petition for review elude the jurisdiction-stripping provisions of the INA."). Several circuits, including the Fourth Circuit, have held that such jurisdiction only exists in the context of removal proceedings. See Lee v. U.S. Citizenship & Immigration Servs., 592 F.3d 612, 620 (4th Cir. 2010) ("To the extent Congress decided to permit judicial review of a constitutional or legal issue bearing upon the denial of adjustment of status, it intended for the issue to be raised to the court of appeals during removal proceedings....Unlike subsection (B), § 1252(a)(2)(D), by its express terms, applies only in the context of removal proceedings.") (emphasis in original). See also Green v. Napolitano, 627 F.3d 1341, 1346-47 (10th Cir. 2010); Ikenokwalu-White v. Gonzales, 495 F.3d 919, 925 (8th Cir. 2007). Thus, while jurisdiction over Plaintiffs' questions of law and constitutional claims would be appropriate upon petition to the Court of Appeals in the context of a removal proceeding, it is not appropriate in this court. See Lee, 592 F.3d at 620

("Even if we assume Lee's challenge raises a reviewable question of law, § 1252(a)(2)(D) does not give Lee a jurisdictional bootstrap into district court.").

In this case, the court notes that even if Plaintiffs were to directly petition the Fourth Circuit for review of their constitutional claims and questions of law raised here, the Circuit would be without jurisdiction to address them under 8 U.S.C. § 1252(a)(2)(D), as they do not rise in the context of removal proceedings. Thus, Plaintiffs' claims, as the procedural posture of the case currently stands, are not reviewable under 8 U.S.C. § 1252(a)(2)(D) in either this court or the Court of Appeals. At the hearing, the court noted that a finding that this court lacked jurisdiction under 1252(a)(2)(B)(ii) to hear Plaintiff's questions of law about the standard applied to his I-130 form, taken in tandem with the fact that the Court of Appeals would lack jurisdiction to hear such claims under 1252(a)(2)(D) unless Plaintiff Chan were put into removal proceedings, would essentially leave Plaintiffs without a means of judicial review of an agency action that may or may not violate the APA. Plaintiffs also stated at the hearing that it is by no means certain that Plaintiff Chan will ever be placed in removal proceedings, which would essentially render the questions of law and constitutional issues raised regarding USCIS' procedures unreviewable. However, the Fourth Circuit commented on this precise conundrum in dicta in Lee, noting:

> Lee claims that, in cases like his, our interpretation [finding neither district court nor appellate court jurisdiction over his APA claim challenging promulgation of a regulation as ultra vires] leads to unjust results. Because the Agency controls when or even if Lee will be placed in removal proceedings, Lee argues that he is effectively in a state of "limbo" and cannot seek judicial review. Our task, however, is only to determine the meaning of the statute as passed by Congress, not to question the wisdom of the provision enacted.

-14-

Lee, 592 F.3d at 620, n. 5. (citing Sigmon Coal Co. v. Apfel, 226 F.3d 291, 308 (4th Cir.2000), aff'd sub nom., Barnhart v. Sigmon Coal Co., 534 U.S. 438 (2002)). The court finds that the same logic applies in this case. Thus, while the court is not deaf to the Plaintiffs' argument that the structure of judicial review in these proceedings may lead to unjust results, it is without the ability to provide an avenue of judicial review of their claims at this time.[8]

---

[8] While the court does not believe that it has subject matter jurisdiction here, it does take the opportunity to note that the facts of this case present an interesting question of administrative law that the court believes deserves attention from an appropriate court at an appropriate time. Specifically, the court believes that the way in which USCIS came up with and now applies the "beyond a reasonable doubt" standard in making its discretionary decisions as to the "no-risk" determination presents a colorable question as to compliance with the APA's rulemaking procedures. As noted above, USCIS has posited via guidance memoranda that a petitioner must provide evidence that establishes "beyond a reasonable doubt" that he or she poses no risk to the beneficiary. USCIS applied this standard in reviewing Plaintiff Roland's application materials in determining whether he posed "no risk" to his wife, and placed the burden on him to overcome the presumption that he did pose a risk. See Notice of Denial (#19-8 at p. 8). Notably, USCIS' interpretation of the applicable burden of proof was not issued under any notice and comment rulemaking procedures and thus, the public was not permitted to comment on the use of this burden of proof, which is typically, if not exclusively, applied criminal proceedings. When applied in a criminal case, it is the Government's burden to prove. Significantly, the Government has not pointed the court to any other instance where the agency applies this heightened standard, or where any other federal agency has used this standard in a civil proceeding.

The Supreme Court recently summarized the rulemaking procedures under the APA:

The APA establishes the procedures federal administrative agencies use for "rule making," defined as the process of "formulating, amending, or repealing a rule." § 551(5). "Rule," in turn, is defined broadly to include "statement [s] of general or particular applicability and future effect" that are designed to "implement, interpret, or prescribe law or policy." § 551(4). Section 4 of the APA, 5 U.S.C. § 553, prescribes a three-step procedure for so-called "notice-and-comment rulemaking." First, the agency must issue a "[g]eneral notice of proposed rule making," ordinarily by publication in the Federal Register. § 553(b). Second, if "notice [is] required," the agency must "give interested persons an opportunity to participate in the rule making through submission of written data, views, or arguments." § 553(c). An agency must consider and respond to significant comments received during the period for public comment. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971); Thompson v. Clark, 741 F.2d 401, 408 (C.A.D.C.1984). Third, when the agency promulgates the final rule, it must include in the rule's text "a concise general statement of [its] basis and purpose." § 553(c). Rules issued through the notice-and-comment process are often referred to as "legislative rules" because they have the "force and effect of law." Chrysler Corp. v. Brown, 441 U.S. 281, 302–303, 99 S.Ct. 1705, 60 L.Ed.2d 208 (1979) (internal quotation marks omitted).

Not all "rules" must be issued through the notice-and-comment process. Section 4(b)(A) of the APA provides that, unless another statute states otherwise, the notice-and-comment requirement "does not apply" to "interpretative rules, general statements of policy, or rules of agency organization, procedure, or practice." 5 U.S.C. § 553(b)(A). … the critical feature of interpretive rules is that they are "issued by an agency to advise the public of the agency's construction of the statutes and rules

> which it administers." Shalala v. Guernsey Memorial Hospital, 514 U.S. 87, 99, 115 S.Ct. 1232, 131 L.Ed.2d 106 (1995) (internal quotation marks omitted). The absence of a notice-and-comment obligation makes the process of issuing interpretive rules comparatively easier for agencies than issuing legislative rules. But that convenience comes at a price: Interpretive rules "do not have the force and effect of law and are not accorded that weight in the adjudicatory process." Ibid.

Perez v. Mortgage Bankers Ass'n, 135 S. Ct. 1199, 1203-04, 191 L. Ed. 2d 186 (2015).

Following Perez, the U.S. District Court for the District of Columbia aptly marked the distinction between binding and non-binding administrative rules in Mountain States Health Alliance v. Burwell, No. CV 13-641 (RDM), 2015 WL 5297498, at *7 (D.D.C. Sept. 10, 2015):

> Legislative rules are those that grant rights, impose obligations, or produce other significant effects on private interests. In contrast, interpretive rules clarify a statutory or regulatory term, remind parties of existing statutory or regulatory duties, or merely track preexisting requirements and explain something the statute or regulation already required. An interpretive rule must derive a proposition from an existing document whose meaning compels or logically justifies the proposition. Although at times elusive, this dividing line is an essential one. Indeed…the purpose of the APA would be disserved if an agency with a broad statutory command ... could avoid notice-and-comment rulemaking simply by promulgating a comparably broad regulation ... and then invoking its power to interpret that statute and regulation in binding the public to a strict and specific set of obligations.

Mountain States Health Alliance v. Burwell, No. CV 13-641 (RDM), 2015 WL 5297498, at *7 (D.D.C. Sept. 10, 2015) (internal citations and quotations omitted).

The court notes that even where interpretive rules are not intended to have the force and effect of law, agencies sometimes treat them as though they have a binding effect. As noted by the D.C. Circuit, "[i]f an agency acts as if a document issued at headquarters is controlling in the field, if it treats the document in the same manner as it treats a legislative rule, if it bases enforcement actions on the policies or interpretations formulated in the document …then the agency's document is for all practical purposes binding." Appalachian Power Co. v. E.P.A., 208 F.3d 1015, 1020-21 (D.C. Cir. 2000) (citation and quotations omitted). Thus, a guidance document or interpretive rule that is treated like a legislative rule is an impermissible circumvention of the notice and comment procedures required by the APA. See Scenic Am., Inc. v. United States Dep't of Transp., 49 F. Supp. 3d 53, 60 (D.D.C. 2014). Here, Plaintiff challenges the use of the adoption of the "beyond a reasonable doubt" standard in an immigration context and its retroactive application. While Plaintiff does not appear to directly challenge the agency's routine application of the heightened burden of proof in this case, it appears to the court that the central APA question presented by the facts of this case is whether the agency is unlawfully treating a standard promulgated as administrative guidance as a binding rule. The court finds this particularly concerning in light of the fact that the agency is applying a standard that, to the court's knowledge, is exclusively reserved for proving a person's guilt in a criminal case, to a determination of benefits in a civil immigration proceeding. While that standard may or may not be appropriate, if it is being routinely applied by the agency in a manner that shows that the agency considers the guidance document a binding law, the public deserves an opportunity to comment on it. Nonetheless, as the court lacks subject matter jurisdiction, it will not wade into the lengthy analysis of such question of administrative law. It simply notes that such question has at least raised a concern of improper agency action in this court.

## V. Conclusion

For the reasons stated herein, the court finds that it is without subject matter jurisdiction and accordingly, will dismiss this action with prejudice. The court therefore enters the following Order.

**ORDER**

**IT IS, THEREFORE, ORDERED** that Plaintiffs' Motion for Summary Judgment (#19) is **DENIED**; Defendants' Motion for Summary Judgment (#18) is **GRANTED IN PART** as to the jurisdictional issue; and this matter is **DISMISSED** for lack of subject matter jurisdiction.


Signed: October 23, 2015

Max O. Cogburn Jr
United States District Judge